Christopher J. WORDEN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10005.

Court of Appeals of Alaska.

May 22, 2009.

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant.

Blair M. Christensen, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

COATS, Chief Judge.

After a jury trial, Christopher J. Worden was convicted of three counts of sexual abuse of a minor in the first degree,[1] six counts of sexual abuse of a minor in the second de-

1. AS 11.41.434(a)(1).

gree,[2] four counts of possession of child pornography,[3] and one count each of indecent exposure in the second degree[4] and unlawful exploitation of a minor.[5] Superior Court Judge Charles T. Huguelet sentenced Worden to a composite sentence of 37 years and 6 months' imprisonment with 21 years and 6 months suspended.

Worden appeals, arguing that Judge Huguelet erred in denying his motion to dismiss the indictment and in refusing to grant Worden's motion for a continuance when the State presented an expert witness without appropriate notice under Alaska Criminal Rule 16. Worden also argues that the evidence presented at trial was insufficient to support his conviction for possession of child pornography. Finally, Worden argues that Judge Huguelet imposed an excessive sentence.

We conclude that Judge Huguelet did not err in refusing to grant Worden's motion to dismiss the indictment and did not err in denying Worden's motion for a continuance. However, we conclude that the State did not present sufficient evidence to convict Worden of possession of child pornography. Because this latter decision affects Worden's sentence, we remand for resentencing and do not decide whether Worden's sentence was excessive.

*Factual background*

On May 27, 2002, Juanita Thirlwell was visiting her son and daughter-in-law, Gene and Shari Conner, and her grandchildren, including C.C. (age eleven) and S.B. (age nine) at their home in Kenai. Worden, a family friend, was also at the house. At some point, Worden, C.C., and S.B. went into another room to watch a movie. In a reflection in a window, Thirlwell saw Worden rubbing and squeezing S.B.'s buttocks and touching her vaginal area over her clothes. The next weekend, Thirlwell, Shari Conner, S.B., and C.C. reported the assault to the Kenai police.

On June 3, 2002, Kenai police officers interviewed Worden. Worden admitted to having engaged in some inappropriate conduct with C.C. and S.B. and was arrested. Worden's wife, Renee, gave the police permission to seize and search two computers from her home that Worden had used. Police department employee Virgil Gattenby conducted a forensic examination of the computers. He found multiple images of child pornography in the computer's cache files. Worden was indicted on numerous felony charges.

At trial, S.B. testified that Worden had touched her on her breasts, buttocks, and genital area numerous times, including the incident on May 27, 2002. She also stated that Worden digitally penetrated her vagina and anus, and made her masturbate him. C.C. testified that Worden had touched her buttocks and breasts on a few occasions. Worden was convicted and he now appeals.

*Worden's motion to dismiss the indictment*

Prior to trial, Worden moved to dismiss the indictment. Worden's motion was based on a factual inaccuracy. He argued that it was improper for Shari Conner, S.B.'s mother and C.C.'s stepmother, to sit on the grand jury panel that indicted him. In its opposition, the State pointed out that, although Conner was a member of the grand jury venire which had been called to hear cases over a three-month period, she did not sit on the panel that indicted Worden. In denying Worden's motion to dismiss the indictment, Judge Huguelet noted that Conner was not on the panel that indicted Worden and that Worden had not presented "particularized circumstances establishing the likelihood of a significant influence on the grand jury as a whole."[6]

On appeal, Worden argues that, at the grand jury proceeding, the State "should have conducted a more searching inquiry into

---

2. AS 11.41.436(a)(2), (4).

3. AS 11.61.127.

4. AS 11.41.460(a).

5. AS 11.41.455(a)(6).

6. Judge Huguelet was quoting from *Patterson v. State*, 747 P.2d 535, 537 (Alaska App.1987).

the grand jury's ability to impartially and fairly assess [Conner's] testimony." But Worden concedes that he did not raise this issue in the trial court. He must therefore establish plain error. Because Worden never raised this issue in the trial court, there is simply no record to indicate whether the grand jurors might have been prejudiced by their association with Conner. Further, even if Worden had established prejudice and Judge Huguelet had granted the motion to dismiss the indictment, the State could have easily reindicted Worden because the case against him was strong.[7] There is simply no basis to find plain error.

*Worden's motion for a continuance*

◼ Worden argues that the State called an expert witness at trial without giving him the notice required by Alaska Criminal Rule 16. Rule 16(b)(1)(B) requires the prosecutor to inform the defendant, no later than forty-five days before trial, of any expert witnesses the prosecutor is likely to call at trial. Among other things, the prosecutor is to furnish the defendant with "a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion."[8]

The witness in question was Virgil Gattenby. Gattenby worked at the Kenai Police Department as the communications supervisor. This job entailed running the 911 center, working as the system administrator, and occasionally doing computer forensics work. Gattenby was not a law enforcement officer but had previously been an information management officer in the military. In addition to maintaining computer networks for the Department of Defense, Gattenby's military experience included doing computer forensic analyses and testifying at court martials based on those analyses. Gattenby performed the computer forensic analysis on Worden's computer.

At trial, after the State asked Gattenby if he found child pornography on Worden's computer, Worden objected, apparently because he believed that the State would be eliciting an expert opinion from Gattenby. After a mostly inaudible bench conference, Judge Huguelet stated: "I won't allow [Gattenby] to give any expert opinions."

Worden did not make any further objections during Gattenby's testimony. But after Gattenby testified, Worden argued that portions of Gattenby's testimony constituted expert testimony and that the State had violated Rule 16 by not giving notice that it was calling Gattenby as an expert witness. Worden asked Judge Huguelet to strike Gattenby's testimony or to grant the defense a continuance. Worden represented that if the State had given notice that Gattenby would be called to testify as an expert, he would have obtained his own expert to analyze the information presented by Gattenby and might have called the expert as a witness at trial.

Judge Huguelet observed that Gattenby had testified before the grand jury. He concluded that Worden had known about the nature of Gattenby's testimony and that he had copies of the exhibits that Gattenby had relied upon for a long time. Worden conceded that he had possessed this information "for years." But Worden's attorney argued that it was not his job to ask "the State to hurry up and get their expert notice in so they can convict my client."

Judge Huguelet denied Worden's motion for a continuance. He concluded that Worden was on notice of the type of testimony that Gattenby was going to give and the issues that would be raised by that testimony. This conclusion is supported by the record. Furthermore, when Worden moved for a continuance, he never gave any indication of how long of a continuance he would need or what he specifically intended to accomplish if the court granted the motion for a continuance. Accordingly, we conclude that Judge Huguelet did not abuse his discretion in denying Worden's motion for a continuance.

In addition, we find that Worden has waived this objection. When Worden initially objected to Gattenby's testimony, Judge

---

**7.** *See Gaona v. State,* 630 P.2d 534, 536–37 (Alaska App.1981).

**8.** Alaska R.Crim. P. 16(b)(1)(B).

Huguelet ruled that he would not allow Gattenby "to give any expert opinions." This ruling alerted Worden that if he believed that Gattenby was testifying as an expert during some portion of his testimony, Worden should object. Judge Huguelet's implication appeared to be that if Worden could show that Gattenby was giving expert testimony, Judge Huguelet would sustain Worden's objection. But Worden never objected on this ground during Gattenby's testimony. And he cross-examined Gattenby on several technical portions of his testimony. By his inaction, Worden has waived this objection.

*The State did not present sufficient evidence to convict Worden of possession of child pornography*

■ Gattenby testified that when he examined Worden's computer, he found images of child pornography that Worden had accessed and viewed on the Internet. Gattenby's testimony supported the conclusion that Worden had intentionally accessed the child-pornography sites because his examination showed that: (1) Worden had visited certain websites containing child pornography more than once, and (2) it would have taken Worden's computer several minutes to load the images, and the images recovered had loaded completely.

But Gattenby testified that even though the images of child pornography were found amongst the cache files on the hard drive of Worden's computer, there was no indication that Worden had any intent to permanently store the images—his intent was simply to view the images on his computer screen for

the time he was at a given website. Gattenby explained that when a person uses a computer to access a site on the Internet, the computer automatically stores the images from the web page in the browser cache. This enables the computer to load the web page more quickly when you revisit it, because data is accessed directly from the computer's hard drive rather than loading that data over the Internet.[9]

Most people do not know that these temporary internet files are being stored on their computer when they access the Internet.[10] A user would need a high level of computer knowledge to locate and access these images.[11] Computer forensic experts like Gattenby often use specialized software to access the cache files.[12]

In the present case, the State did not present any evidence that Worden had this specialized knowledge—that he was aware that images were stored in his computer's browser cache or that he might have the ability to access those images—at the time of the alleged offense. As Gattenby testified, the evidence supported the inference that Worden had viewed child pornography on certain websites at some point in the past. But there was no evidence that Worden knew that the images from these websites were being stored in his computer's cache or that he intended to save them on his computer.

The State's case, therefore, rested upon proof that Worden intentionally accessed and viewed images of child pornography over the Internet. But we conclude that AS 11.61.127, the Alaska Statute prohibiting the knowing possession of child pornography,

---

9. *See United States v. Romm,* 455 F.3d 990, 993 n. 1 (9th Cir.2006) ("Most web browsers keep copies of all the web pages that you view ... so that the same images can be redisplayed quickly when you go back to them." (quoting Douglas Downing et al., *Dictionary of Computer and Internet Terms* 149 (Barron's 8th ed. 2003))); *see also* Ty E. Howard, *Don't Cache out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files,* 19 Berkeley Tech. L.J. 1227, 1229–30 (2004) (explaining basic operation and purpose of cache).

10. *See, e.g., United States v. Kuchinski,* 469 F.3d 853, 862 & n. 24 (9th Cir.2006) (noting government expert's agreement with statement that "most sophisticated—or unsophisticated users

don't even know [the cache files are] on their computer").

11. *See* Giannina Marin, *Possession of Child Pornography: Should You be Convicted When the Computer Cache does the Saving for You?,* 60 Fla. L.Rev. 1205, 1213–14 (2008) ("A user needs advanced computer skills to directly access files in the cache while the computer is offline.").

12. *See, e.g., Barton v. State,* 286 Ga.App. 49, 648 S.E.2d 660, 661 (2007) (where State's expert testified that "no one using the computer can retrieve information stored in the temporary internet file folders without special forensic software").

does not criminalize merely viewing images of child pornography on a computer. The statute prohibits the "possession" of "material that visually or aurally depicts conduct [constituting child pornography]." [13] Another section of the statute provides that "[e]ach film, audio, video, electronic, or electromagnetic recording, photograph, negative, slide, book, newspaper, magazine, or other material" depicting child pornography that is knowingly possessed by the defendant constitutes a separate crime.[14]

It is questionable whether the act of possessing material encompasses viewing an image on a computer screen. If Worden had gone to a movie depicting child pornography, it could not be said that he possessed the child pornography depicted in the movie, even though it might be clear that he had intentionally set out to view those images. Interpreting the former version of the federal statute criminalizing the possession of child pornography,[15] which is similar to AS 11.61.127(c), federal courts have concluded that merely viewing child pornography on a computer, as opposed to saving it on the computer, was not prohibited by the stat-

ute.[16] The Court of Appeals for the Ninth Circuit interpreted the former federal statute to criminalize only the knowing possession of files on a hard drive or other computer storage device.[17] It follows that where a defendant is not aware of the existence of the cache files, he has not committed a crime.

Some state courts have construed their statutes prohibiting the possession of child pornography to criminalize the use of a computer to access images of child pornography over the Internet.[18] But those states' statutes are much broader than AS 11.61.127.[19]

█ A basic rule of statutory construction "is that statutes imposing criminal liability should be construed narrowly." [20] Therefore, "[w]hen the scope of a criminal statute is unclear, courts should normally construe the statute against the government—that is, construe it so as to limit the scope of criminal liability." [21] At best, AS 11.61.127 is ambiguous as to whether it criminalizes viewing a digital image of child pornography over the Internet. Because we must interpret the statute narrowly, we conclude that it does

**13.** AS 11.61.127(a).

**14.** AS 11.61.127(c).

**15.** Former 18 U.S.C. 2252A(a)(5)(B) (2006) (making it a crime to "knowingly possess[ ] any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been ... transported in interstate or foreign commerce by any means, including by computer"), *amended by* Enhancing the Effective Prosecution of Child Pornography Act of 2007, Pub.L. No. 110–358, Title II § 203(b), 122 Stat. 4001, 4003–04 (2008) (inserting "or knowingly accesses with intent to view" into the operative language of 18 U.S.C. 2252A(a)(5)(B)).

**16.** *See, e.g., United States v. Stulock,* 308 F.3d 922, 925 (8th Cir.2002) (noting with approval the district court's holding that "one cannot be guilty of possession for simply having viewed an image on a web site, thereby causing the image to be automatically stored in the browser's cache, without having purposely saved or downloaded the image").

**17.** *Kuchinski,* 469 F.3d at 863 ("[W]here a defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other

indication of dominion and control over the images."); *Romm,* 455 F.3d at 1000 ("[T]o possess the images in the cache, the defendant must, at a minimum, know that the unlawful images are stored on a disk or other tangible material in his possession.").

**18.** *See, e.g., Ward v. State,* 994 So.2d 293, 301–02 (Ala.Crim.App.2007); *Tecklenburg v. Superior Court,* 169 Cal.App.4th 1402, 87 Cal.Rptr.3d 460, 472–73 (2009); *Commonwealth v. Diodoro,* 932 A.2d 172, 174–75 (Pa.Super.2007), *cert. granted,* 595 Pa. 537, 939 A.2d 290 (2007).

**19.** *See, e.g.,* Cal.Penal Code § 311.11 (West 2008) (criminalizing possession or control of "any matter, representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD–ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip," that depicts minors engaging in or simulating sexual conduct).

**20.** *State v. ABC Towing,* 954 P.2d 575, 579 (Alaska App.1998).

**21.** *Id.*

not prohibit viewing child pornography on a computer screen. Since this is the only conduct the State proved Worden knowingly engaged in, insufficient evidence existed to convict Worden of possession of child pornography.

### Conclusion

We AFFIRM all of Worden's convictions except his convictions for possession of child pornography. Worden's convictions for possession of child pornography must be REVERSED and a judgment of acquittal must be issued. We do not decide whether Worden's sentence is excessive because Worden must be resentenced based on the reversal of his convictions for possession of child pornography.

The judgment of the superior court is AFFIRMED in part and REVERSED in part. The superior court shall resentence Worden within 90 days and transmit a copy of the judgment to this court. After the distribution of the amended judgment, Worden shall have 30 days to renew his sentence appeal. We retain jurisdiction.