NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

KEONE JASON LEE,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12860
Trial Court No. 3AN-11-08545 CR

O P I N I O N

No. 2719 — February 4, 2022

Appeal from the Superior Court, Third Judicial District, Anchorage, Jack W. Smith, Judge.

Appearances: Michael Horowitz, Law Office of Michael Horowitz, Kingsley, Michigan, under contract with the Office of Public Advocacy, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD.

Keone Jason Lee was convicted, following a jury trial, of five counts of first-degree sexual abuse of a minor, nine counts of second-degree sexual abuse of a minor, two counts of third-degree assault, and two counts of possession of child

pornography.[1] The sexual abuse charges related to acts of penetration and sexual contact with two young girls — eleven-year-old S.A. and her sister, six-year-old D.A.

Lee raises four claims on appeal. First, he argues that the State presented insufficient evidence to support his convictions for possession of child pornography. We conclude that the evidence was sufficient to support these convictions.

Second, Lee argues that the trial court abused its discretion when it denied Lee's motion to sever the possession of child pornography charges from the sexual abuse charges. For the reasons explained here, we find no abuse of discretion.

Third, Lee argues that his constitutional right to confrontation was violated when the court allowed the State to play a video recording of an interview of D.A. made at a child advocacy center. For the reasons explained here, we conclude that D.A. was available for cross-examination, and admission of the recorded interview therefore did not violate Lee's right to confrontation.

Fourth, Lee argues that the trial court erred in concluding that his prior military adjudication for possession of child pornography qualified as a prior felony for presumptive sentencing purposes. Lee raises two separate issues with regard to this claim of error. Lee first asserts that the federal crime for possessing child pornography is not similar to the Alaska crime for possessing child pornography and therefore cannot qualify as a prior felony conviction under Alaska law. We find no merit to this contention.

Lee also argues that military adjudications should not count as prior felony convictions for purposes of Alaska presumptive sentencing law because defendants in military tribunals are not entitled to a unanimous verdict by a jury of their peers. For the

---

[1] AS 11.41.434(a)(1), AS 11.41.436(a)(2), AS 11.41.220(a)(1), and AS 11.61.127, respectively.

reasons explained here, we conclude that the trial court could properly rely on Lee's prior military conviction for purposes of Alaska's presumptive sentencing scheme because the record shows that Lee voluntarily and intelligently pleaded guilty to the prior felony with the aid of counsel, waiving his right to any trial and signing a four-page stipulation admitting to his guilt.

*Background facts*

During the summer of 2011, eleven-year-old S.A. and her sister, six-year-old D.A., along with their parents and other siblings, lived with Keone Jason Lee in his trailer in Anchorage. After S.A. and D.A. spent a few days away from Lee's home, S.A. told a family friend that Lee had touched her genitals. The family friend contacted the police.

Both S.A. and D.A. were interviewed at a child advocacy center. During S.A.'s interview, she described four different incidents of sexual abuse, involving both sexual contact and sexual penetration, that occurred over the course of a month. S.A. reported that on three separate occasions, Lee licked her breasts and genitals. During one of these assaults, Lee touched her "inside" with his tongue and told her to "press his head down" while he was doing so, threatening to "hurt [S.A.] and [her] family, and make sure [she'd] never be able to see anyone" if she did not do so. S.A. also described another incident when Lee touched her genitals with his hand.

S.A. stated that "every now and then he said I made him feel like he wanted to have sex with me." S.A. also reported that Lee began putting cameras outside the window of the trailer so he would know when S.A.'s parents were coming back, but he took the cameras down when S.A.'s father found out about them.

In her interview, six-year-old D.A. initially reported that Lee had touched her genitals one time, but she then said that it happened two times, and later, three times. She also stated that Lee touched inside her "private" with his penis.

Both girls reported that Lee threatened to kill S.A. with a sword that he kept in his bedroom. S.A. stated that Lee had twice pulled out the sword and threatened her if she told anyone of the abuse. He told her not to tell anyone or he would kill her, her friends, and her family.

Pursuant to a search warrant, the police retrieved a decorative sword from Lee's bedroom and seized a laptop and a desktop computer. The police searched the computers using Forensic Toolkit software and discovered hundreds of images of child pornography — 312 images on Lee's desktop computer and ten images on Lee's laptop. All of these images were found in the computers' unallocated space. The images did not depict S.A. or D.A., and there was no indication that S.A. or D.A. ever viewed any of the images.

When interviewed by police, Lee denied ever being alone with the children or sexually abusing them. With regard to S.A.'s allegations, Lee stated that he would have to assume S.A. was lying about the abuse, unless he had committed the acts when he "was passed out or something because [he] ha[d] no memory of doing such [a] thing." Lee also asserted that he had "little to no interest in sex, for the most part."

*Prior proceedings*

For the incidents involving S.A., a grand jury indicted Lee on four counts of first-degree sexual abuse of a minor, seven counts of second-degree sexual abuse of a minor, and two counts of third-degree assault.[2] For the incidents involving D.A., the

---

[2] AS 11.41.434(a)(1), AS 11.41.436(a)(2), and AS 11.41.220(a)(1), respectively.

grand jury indicted Lee on two counts of first-degree sexual abuse of a minor and two counts of second-degree sexual abuse of a minor.[3] A grand jury also indicted Lee on two counts of possessing child pornography, predicated on two images found respectively on each of Lee's computers.[4]

The State joined the counts together and presented the case at a single jury trial. The jury failed to reach a verdict on one count of first-degree sexual abuse of a minor for conduct involving D.A. but found Lee guilty of the remaining eighteen counts.

At sentencing, the trial court ruled that Lee's previous military adjudication qualified as a prior felony conviction for presumptive sentencing purposes. As a second felony offender, Lee faced a minimum presumptive sentence of just over 75 years.[5] The court sentenced Lee to a composite term of 115 years to serve with no time suspended.

This appeal followed.

---

[3]   AS 11.41.434(a)(1) and AS 11.41.436(a)(2), respectively.

[4]   AS 11.61.127. A grand jury later indicted Lee on one count of distribution of child pornography under AS 11.61.125(a). The State agreed to sever the count for purposes of trial, and later dismissed the charge.

[5]   AS 12.55.125(i) (presumptive range for first-degree sexual abuse of a minor is 35 to 45 years if defendant has prior sexual felony conviction); AS 12.155.125(e) (a second felony offender faces a sentence of 2 to 4 years for a class C non-sexual felony offense); AS 12.55.127(c)(2)(E) (court must impose at least one-fourth of the presumptive term for each additional crime that is first-degree sexual assault or abuse of a minor); AS 12.55.127(d) (court must impose a consecutive term for some additional term of imprisonment for each additional crime if the defendant is being sentenced to certain crimes, including possession of child pornography under AS 11.61.127); AS 12.55.145(a)(4)(A) ("[A] conviction in this jurisdiction of an offense having elements similar to those of a sexual felony is a prior conviction for a sexual felony.").

*Sufficient evidence supported Lee's convictions for possession of child pornography*

Under AS 11.61.127, a person commits the crime of possession of child pornography if the person "knowingly possesses" or "knowingly accesses on a computer with intent to view" visual material that fits within the statutory definition of child pornography.[6]

On appeal, Lee argues that the evidence at trial did not establish his knowing possession of the child pornography images, because the images were found in his computers' unallocated space — *i.e.*, the space on a computer's hard drive that contains deleted data that has not yet been overwritten but which cannot be retrieved without specialized software.[7]

Lee's argument relies on our prior decision in *Worden v. State*, which dealt with an earlier version of AS 11.61.127.[8] At the time we decided *Worden*, the statute only prohibited knowing "possession" of child pornography; it did not prohibit accessing child pornography over the internet.[9] In *Worden*, the State's case rested on the theory that the defendant had accessed and viewed child pornography that was later found in the internet browser cache files of his computer.[10] Observing that "[m]ost people do not know that these temporary internet files are being stored on their computer when they access the internet," we concluded that the State had failed to present sufficient evidence

---

[6]  Child pornography is defined by reference to the conduct listed in AS 11.41.455(a), the unlawful exploitation of a minor statute.

[7]  *See United States v. Flyer*, 633 F.3d 911, 918 (9th Cir. 2011) (defining "unallocated space").

[8]  *Worden v. State*, 213 P.3d 144 (Alaska App. 2009).

[9]  *Id.* at 148.

[10]  *Id.* at 147-48.

of knowing possession.[11]  That is, the State had not presented any evidence that the defendant was aware that the computer had stored the images; nor had it shown that he had the ability to retrieve them.[12]  We therefore reversed the conviction for possessing child pornography.[13]

Following *Worden*, however, the legislature amended AS 11.61.127 to prohibit not only possession but also accessing child pornography on a computer with the intent to view it.[14]  Accordingly, now, and at the time of Lee's offenses, Alaska's possession of child pornography statute prohibits both knowingly possessing child pornography and knowingly accessing it with the intent to view it.[15]

Lee's argument on appeal focuses on whether the State presented sufficient evidence to prove that he "possessed" the deleted images at the time they were in the unallocated space of his computers.  He notes that the police were only able to retrieve the images from the unallocated space using specialized software and that no such software was found on Lee's computers.

But the State did not argue that Lee possessed the child pornography images because he could access them from the unallocated space; rather, the State's theory was that Lee had accessed and possessed the images by using file-sharing software *before* he deleted them.  Specifically, the prosecutor urged the jury to find that

---

[11]  *Id.* at 147.

[12]  *Id.*

[13]  *Id.* at 148-49.

[14]  AS 11.61.127(a), *as amended by* SLA 2010, ch. 18, § 6; *see Harris v. State*, 2020 WL 6158086, at *1-2 (Alaska App. Oct. 21, 2020) (unpublished) (discussing the legislative amendment following *Worden*).

[15]  AS 11.61.127(a), *as amended by* SLA 2010, ch. 18, § 6.

the images were "at one time" in the allocated space of Lee's computers, and thus the images were "accessible to the user" before they were deleted.

Indeed, when the trial court denied Lee's motion for judgment of acquittal on the child pornography counts, the court distinguished Lee's case from other cases (like *Worden*) that evaluated the sufficiency of the evidence of possession based on images found in an area of the computer not obviously available to the user. The court noted that, in Lee's case, the State was pursuing an access theory — *i.e.*, that someone knowingly accessed the images, with the intent to view them, before deleting them.

We note that Lee never argued at trial that someone else downloaded and deleted the images, nor did he argue that the images were accessed inadvertently. And in his statement to the police, Lee acknowledged that the computers were his. In addition, Lee's tax forms, his school transcripts, pictures of his car, and corresponding car manuals were found in the unallocated space of Lee's laptop — and the same car manuals were also found in the unallocated space of Lee's desktop computer. One of the images of child pornography found on Lee's desktop computer was also among the images found on Lee's laptop. When the police searched Lee's computers, they discovered the file-sharing program, BitTorrent, on Lee's desktop. The same BitTorrent download folder that contained the pornographic images also contained the car manual and images of a Mitsubishi 3000GT labeled "Keone's car."

Viewing this evidence in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient to establish that, prior to deleting the images, Lee knowingly possessed or knowingly accessed the child pornography with intent to view it, for purposes of AS 11.61.127.[16]

---

[16]  *See Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012) ("When we review the sufficiency of the evidence to support these convictions, we view the evidence in the light

(continued...)

*The trial court did not abuse its discretion in denying Lee's motion to sever the child pornography charges from the remaining charges*

Prior to trial, Lee's attorney moved to sever the child pornography charges from the remaining counts, arguing that the charges were improperly joined under Alaska Criminal Rule 8(a). In the alternative, the attorney argued that joinder was unfairly prejudicial and that severance was required under Alaska Criminal Rule 14. The superior court denied the motion. Lee now challenges that decision on appeal.

When we review a trial court's denial of a motion to sever, we engage in a two-part inquiry.[17]

First, we determine whether joinder of the charged offenses is proper under Alaska Criminal Rule 8(a).[18] Under this rule, two or more offenses may be joined in the same indictment or information — and therefore presented in a single trial — if those charges:

> (1) are of the same or similar character and it can be determined before trial that it is likely that evidence of one charged offense would be admissible to prove another charged offense,

> (2) are based on the same act or transaction, or

> (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

(...continued)
most favorable to the verdict and ask whether a reasonable juror could have concluded that the defendant was guilty beyond a reasonable doubt.").

[17]  *See Nell v. State*, 642 P.2d 1361, 1363 (Alaska App. 1982).

[18]  *Id.*

Second, we review the superior court's ruling that joinder of the offenses would not unfairly prejudice the defendant.[19] Even if joinder is proper under Criminal Rule 8(a), a trial court may sever charges and require separate trials if the joinder unfairly prejudices the defendant.[20]

Here, the trial court found that joinder was proper under Criminal Rule 8(a)(3) — *i.e.*, that the charges were "based on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

We have previously upheld joinder of child pornography and sexual abuse of a minor charges under Criminal Rule 8(a)(3) in two unpublished cases — *Ogletree v. State* and *Carr v. State*.[21] But those cases are distinguishable from Lee's case. In those cases, there was a distinct evidentiary nexus between the child pornography charges and the sexual abuse of a minor charges such that the offenses could reasonably be viewed as "two or more acts or transactions connected together or constituting parts of a common scheme or plan." In *Ogletree*, for example, the defendant took pornographic images of his sexual abuse victim, showed her images of child pornography, and encouraged her to make child pornography with him.[22] Likewise, in *Carr*, the defendant

---

[19]  *Id.*

[20]  Alaska R. Crim. P. 14; *see also Newcomb v. State*, 800 P.2d 935, 943 (Alaska App. 1990).

[21]  *Ogletree v. State*, 2009 WL 2568533, at *3 (Alaska App. Aug. 19, 2009) (unpublished); *Carr v. State*, 2007 WL 1228948, at *4-5 (Alaska App. Apr. 25, 2007) (unpublished).

[22]  *Ogletree*, 2009 WL 2568533, at *3.

recorded sexual conduct with his two sexual abuse victims, and those images were among the child pornography found on his computer.[23]

Here, in contrast, S.A. and D.A. were not depicted in any of the images found on Lee's computers. Nor is there any indication that Lee showed child pornography to S.A. or D.A., or otherwise used the images to further his conduct with the children.[24] Under these circumstances, we agree with Lee that joining the charges would violate Criminal Rule 8(a)(3).

However, although the trial court's order cites Criminal Rule 8(a)(3) as the basis for its joinder decision, its reasoning appears to be based on an analysis of Criminal Rule 8(a)(1). Under Criminal Rule 8(a)(1), charges may be joined if the charges "are of the same or similar character" and evidence of one would likely be admissible to prove the other. The trial court made these findings in this case. Specifically, the court found that evidence supporting the charges of possessing pornography would likely be admissible under Alaska Evidence Rule 404(b)(1) to prove Lee's "motive, intent, plan or absence of mistake or accident" in a prosecution of the sexual abuse charges.[25] The court also found that evidence of the sexual abuse would likely be admissible to prove

---

[23]  *Carr*, 2007 WL 1228948, at *4.

[24]  *Cf. State v. Coburn*, 176 P.3d 203, 214 (Kan. App. 2008) (holding that sexual abuse of a child and child pornography possession charges were not part of a common scheme or plan because there was no evidence that the defendant used the child pornography to commit the sexual abuse or that the child saw the pornography).

[25]  *See* Alaska R. Evid. 404(b)(1) ("Evidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith. It is, however, admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.").

"motive, intent and absence of mistake or accident" in a prosecution related to the possession of child pornography.

On appeal, Lee does not challenge the trial court's finding that the charges were "of the same or similar character." However, he does challenge the court's finding of cross-admissibility. According to Lee, the trial court's Rule 404(b)(1) ruling was erroneous and the suggested reasons for admissibility were a guise to admit prohibited propensity evidence. Lee also argues that the trial court erred in listing multiple grounds for admissibility without specifying which ones actually applied and why they applied.

We agree with Lee that the trial court's ruling could have been clearer. As we have stated in the context of Evidence Rule 404(b)(1), simply reciting one or more of the purposes contained in the rule does not fulfill the trial court's duty to ensure that evidence is actually relevant and admissible for the proposed purpose.[26] Instead, the trial court must closely evaluate each of the proposed purposes in their technical sense to ensure that the evidence has a case-specific, non-propensity relevance.[27]

We disagree with Lee, however, that all of the stated grounds for admissibility were erroneous. One of the stated grounds for cross-admissibility was to prove "absence of mistake or accident." On appeal, Lee points out that, at trial, he did not defend against either of the charges by claiming mistake or accident. But Lee ignores the context in which the trial court made its pretrial ruling on Lee's motion to sever. Lee filed his motion to sever early in the case, almost three years before trial occurred. At the time the trial court ruled on the motion, the parties agreed that the trial court could base its ruling on the complaint and charging documents before it.

---

[26] *See Berezyuk v. State*, 407 P.3d 512, 516 (Alaska App. 2017); *Willock v. State*, 400 P.3d 124, 127 (Alaska App. 2016).

[27] *Willock*, 400 P.3d at 127.

The criminal complaint contained a summary of Lee's statements to the police when he was questioned about S.A. and D.A.'s allegations. Among these statements was Lee's response to the question of whether he had ever touched S.A. in a sexual way, to which Lee replied, "No, not intentionally, no." Similarly, when asked if S.A. was lying about the sexual abuse, Lee responded that he "would have to assume so" unless he was "passed out." Lee also affirmatively asserted that he had "little to no interest in sex, for the most part." The existence of the child pornography on Lee's computers tended to rebut these claims.

While Lee did not ultimately argue to the jury that the sexual abuse allegations were the result of involuntary conduct or a mistake or accident, the trial court could reasonably conclude from Lee's own statements that these issues would likely be litigated at trial. Notably, Lee did not renew his motion to sever closer to trial or ask the judge to consider any additional information not presented at the time of the original motion, even though the court expressly qualified its ruling as "based upon what the file shows at this time" and subject to "further consideration."

Thus, given the case-specific reasons for why the trial court could reasonably conclude that absence of mistake or accident would be at issue, we conclude that the trial court did not err in finding, prior to trial, that the two sets of charges could be joined under Criminal Rule 8(a)(1).

We now turn to the question of whether Lee was unfairly prejudiced by the joinder of these two sets of charges. Alaska Criminal Rule 14 allows the trial court to sever charges "[i]f it appears that a defendant . . . is unfairly prejudiced by a joinder of offenses." A trial court's refusal to grant a motion to sever based on a claim of prejudicial joinder is reviewed for an abuse of discretion.[28]

---

[28]    *Sharp v. State*, 837 P.2d 718, 724 (Alaska App. 1992).

We begin our analysis by noting that the risk of unfair prejudice in these situations is very real. Introducing evidence of child pornography to show a defendant's sexual interest in young children is conceptually not that different from introducing evidence of a defendant's propensity to commit sex crimes against children.[29] The evidence also has the potential to be highly inflammatory and may be used improperly by the jury as evidence of the defendant's bad character.[30] We therefore caution trial

---

[29] *See, e.g.*, *State v. Sutherby*, 204 P.3d 916, 923-24 (Wash. 2009) (en banc) (holding that counsel's failure to move to sever child pornography possession from child rape and molestation charges constituted ineffective assistance because rape and molestation evidence was weak and the child pornography "would merely show Sutherby's predisposition toward molesting children"); *Yecovenko v. State*, 173 P.3d 684, 688 (Mont. 2007) (affirming child pornography convictions but reversing sexual assault convictions because "horrific" images would have been "flatly inadmissible" at sexual assault trial if charges had been severed); *State v. Coburn*, 176 P.3d 203, 215 (Kan. App. 2008) (holding that joinder of child abuse and pornography charges was improper as possession of images "could have led jury members to conclude [that the defendant had a] criminal disposition"). *But see United States v. Spoor*, 904 F.3d 141, 155 (2d Cir. 2018) (holding that the defendant's prior sex abuse conviction was admissible to establish motive for possession and production of child pornography and to rebut defense that another person had downloaded the child pornography); *People v. Westerfield*, 433 P.3d 914, 955 (Cal. 2019) (holding that defendant was not entitled to severance of child pornography charges from kidnapping and capital murder charges because "defendant's possession of child pornography reflected an interest in sexual conduct with, indeed sexual assault of, young girls that was highly relevant to explain why he would have kidnapped" and murdered the victim); *State v. Blankenburg*, 966 N.E.2d 958, 965 (Ohio App. 2012), *abrogated on other grounds by State v. Scott*, 155 N.E.3d 56 (Ohio App. 2020) (finding no abuse of discretion in admitting child pornography images to prove defendant's motive for committing sex offenses at joint trial of child sexual abuse and pornography charges). We note that Federal Evidence Rule 414 defines "child molestation" to include possession of child pornography and specifically allows for cross-admissibility of evidence of child sexual abuse and possession of child pornography. There is no equivalent rule under Alaska law.

[30] *See, e.g.*, *State v. Garrett*, 455 P.3d 979, 995 (Or. App. 1991) (concluding that
(continued...)

2719

courts to take this risk seriously and to err on the side of severing these types of charges when there is no direct nexus between the child pornography and sexual abuse.

That said, we conclude that the trial court did not abuse its discretion in the present case by declining to sever the charges.

As an initial matter, we note that the only potential for prejudice in this case was with regard to the sexual abuse charges. As already explained, Lee raised a very technical defense to the child pornography charges. He did not dispute that images of child pornography were found on his personal, custom-built computers; rather, he argued that he could not access (and therefore did not possess) images located in unallocated space. In light of this defense, the jury's joint consideration of the sexual abuse and possession of child pornography charges was unlikely to have an appreciable impact on the jury's verdicts for possession of child pornography.

With respect to the sexual abuse of a minor charges, any unfair prejudice created by the joinder of the child pornography charges with the sexual abuse of a minor charges was greatly diminished by the trial court's decision to limit the images seen by the jury.

On appeal, Lee quotes portions of the record where counsel for both parties referred to the images found on Lee's computers as "shocking" and "inflammatory." The trial court also remarked that "some of [the images] are pretty inflammatory, I've got to say. I mean, I've seen a lot of child pornography pictures. I can tell you a jury's going to have trouble with some of those."

---

(...continued)
evidence of sexual abuse was inadmissible in child pornography case, as it "would have invited the jury to convict the defendant of duplicating child pornography because he is a person with a propensity to sexually abuse children, and it might have distracted the jury from the central question of whether defendant committed the charged crime").

But these comments did not relate to the images introduced at trial; rather, they referred to Lee's child pornography collection as a whole. Noting that many of the images were "extraordinarily disturbing and inflammatory when we're talking about sexual abuse of a minor of a six-year-old and an eleven-year-old," the court proceeded to rule that the vast majority of the images were inadmissible, and that only a few images that appeared similar to "the ages of the victims in the case and the conduct that is alleged to have occurred" could be shown to the jury. Ultimately, only eight images, including the two images for which Lee was indicted, survived the trial court's review.

Thus, due to the care the trial court took to whittle down the number of images presented to the jury — and to exclude the most prejudicial of those images — the potential for undue prejudice was greatly diminished. Moreover, as we previously noted, Lee's statements — particularly his statement about not being interested in sex — provided a case-specific relevancy for these images.

Ultimately, even when charges are improperly joined, the error requires reversal "only if the defendant makes a particularized showing of prejudice." As we have previously stated:

> It is not enough for the defendant to show that evidence of the various charges was not cross-admissible, nor is it enough for the defendant to assert in general terms that the trial of several charges at once might suggest to the jurors that the defendant has a criminal disposition.[31]

---

[31] *Guthrie v. State*, 222 P.3d 890, 895 (Alaska App. 2010).

Instead, the defendant must show "that the jury's ability to fairly decide the individual charges [was] substantially impaired [because] the jury hear[d] evidence relating to other charges at the same time."[32]

Here, the evidence of Lee's sexual abuse of the children was strong, and the jury's decision to acquit on one of the charges demonstrates that they carefully reviewed the evidence and were not simply overcome by emotion. With the exception of the count on which the jury acquitted, the children's accounts supported the sexual abuse and assault charges. The court admitted the recorded interviews of S.A. and D.A. in their entirety, and, during these interviews, both S.A. and D.A. reported that Lee assaulted them on multiple occasions and threatened S.A. with a sword. They also testified at trial. Although D.A. could not recall the assaults that had occurred five years earlier when she was six, S.A. gave consistent testimony regarding what had occurred. S.A. recalled being threatened by Lee and detailed multiple incidents of sexual abuse, including Lee touching her vaginal area while they were watching a movie. She was adamant that she was not mixing up Lee's actions toward her with the actions of someone else.

Given the strength of the evidence and the trial court's care in eliminating the most inflammatory child pornography images, we conclude that Lee has failed to show the particularized prejudice required to prevail on this claim. Accordingly, we find no abuse of discretion in the trial court's decision to deny Lee's motion to sever.

*The admission of D.A.'s video-recorded statement under Evidence Rule 801(d)(3) did not violate Lee's right to confrontation*

Prior to trial, the State moved for a ruling on the admissibility of video-recorded statements made by S.A. and D.A. at a child advocacy center, in which they

---

[32] *Id.* (alterations in original) (quoting *Sharp*, 837 P.2d at 725).

described Lee's abuse. Lee did not oppose the State's request, provided that the trial court made the "necessary judicial findings" under Evidence Rule 801(d)(3) before trial.[33] After viewing the recordings, the trial court ruled that the recordings met the foundational requirements for admission at trial.

By the time the case proceeded to trial in 2016, five years had elapsed from the time S.A. and D.A. had lived with Lee. Both girls had trouble recalling many of the details they had described during their initial recorded statements. D.A. in particular remembered very little of the events that had occurred when she was six years old. She testified that she "[k]ind of" knew Lee but did not remember whether she or her parents ever lived with Lee, what kind of things she would do with Lee, or how Lee treated her. D.A. also could not recall making any allegations about Lee touching her.

During a brief cross-examination, Lee's attorney asked about D.A.'s living situation, her progress in school, and whether anyone had talked to her about the purpose of her testimony. After this brief inquiry, Lee announced that he had no further questions for D.A.

Following D.A.'s testimony, Lee objected to the admission of D.A.'s recorded interview, on the grounds that D.A.'s inability to recall the sexual abuse meant that she was not meaningfully "available for cross-examination," as required by Evidence Rule 801(d)(3)(B). Although Lee acknowledged that D.A. had been physically present in the courtroom and had answered the questions posed to her, Lee argued that introducing the recorded statement would violate his confrontation rights because D.A.

---

[33] *See* Alaska R. Evid. 801(d)(3) (setting out eight foundational requirements for admissibility); *see also Augustine v. State*, 355 P.3d 573, 576-77 (Alaska App. 2015).

never testified directly regarding the sexual abuse.[34] The superior court overruled this objection and permitted the recorded statement to be presented to the jury.

On appeal, Lee renews his argument that admission of D.A.'s recorded statement under these circumstances violated his confrontation rights.

As we have previously held, as a general rule, a witness "is considered 'available' for cross-examination, even if the witness is forgetful, confused, or evasive during the State's direct examination — under the theory that the defense has 'a full and fair opportunity to probe and expose these infirmities through cross-examination.'"[35] Indeed, as the United States Supreme Court has observed, "The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion."[36]

Lee's argument to the contrary is based on Evidence Rule 804(a)(3). Evidence Rule 804(a)(3) provides that a witness is "unavailable as a witness" for purposes of certain hearsay exceptions if the declarant "establishes a lack of memory of the subject matter of the declarant's statement." Lee argues that this definition makes D.A. "unavailable" for cross-examination under Evidence Rule 801(d)(3).

---

[34] *See* U.S. Const. amend. VI; Alaska Const. art. I, § 11; *Crawford v. Washington*, 541 U.S. 36, 68 (2004) (holding that testimonial hearsay violates the Confrontation Clause unless (1) the declarant testifies (and is thus available for cross-examination) at the defendant's trial or (2) the declarant is shown to be unavailable and the defendant had the opportunity to cross-examine the declarant in a previous proceeding); *State v. Powell*, 487 P.3d 609, 612-13 (Alaska App. 2021) ("[S]ubsection (B) of [Evidence Rule 801(d)(3)] — requiring that 'the victim is available for cross-examination' — was included to ensure that the rule was constitutional under *Crawford*." (citing Senate Judiciary Comm., Senate Bill 117, statement of Senator Hollis French, 9:31-9:33 a.m. (Mar. 31, 2005))).

[35] *Dushkin v. State*, 2015 WL 996189, at *3 (Alaska App. Mar. 4, 2015) (unpublished) (quoting *United States v. Owens*, 484 U.S. 554, 558 (1988)).

[36] *Delaware v. Fensterer*, 474 U.S. 15, 21-22 (1985).

But the language in Evidence Rule 804(a)(3) does not stand for the broad proposition Lee suggests. The rule does not define the term "unavailable," but rather the specific phrase "unavailable as a witness" — a phrase used in its entirety to delineate exceptions to the general exclusion of hearsay statements.[37] This phrase does not appear in Evidence Rule 801(d)(3). Instead of the phrase "unavailable as a witness," Evidence Rule 801(d)(3)(B) uses the phrase "available for cross-examination" — a phrase linguistically and substantively distinct from the definition Lee cites in Evidence Rule 804(a)(3). As the Alaska Supreme Court has held, a finding of unavailability as a witness under Evidence Rule 804(a)(3) "does not necessarily equate to a legal determination that the witness could not have been meaningfully cross-examined in a way that would satisfy the accused's constitutional right of confrontation."[38] We thus reject Lee's assertion that D.A.'s lack of memory necessarily rendered her unavailable for cross-examination.

Lee also relies on *Dushkin v. State*, an unpublished case, in which we acknowledged that other jurisdictions have found that a defendant's rights are violated when the defendant must elicit incriminating testimony in order to cross-examine a child witness:

> Courts in some jurisdictions have recognized that there are situations in which a child witness who appears at trial is nevertheless unavailable for cross-examination for purposes of the confrontation clause, owing to the child's inability or unwillingness to answer questions . . . [or] if the prosecutor avoids asking the witness about his or her prior allegations or

---

[37] Alaska R. Evid. 804.

[38] *Vaska v. State*, 135 P.3d 1011, 1021 (Alaska 2006).

expressly informs the witness that he or she may decline to respond to specific questions.[39]

We concluded that we did "not need to decide whether this same reasoning has any force under Alaska law" because the prosecutor had unsuccessfully attempted to elicit testimony from the child witness regarding the allegations of Dushkin's sexual abuse.[40]

Lee's case presents similar circumstances. Here, the prosecutor questioned D.A. extensively about her prior allegations — even after both the judge and Lee's attorney expressed concerns that further attempts to elicit relevant testimony from D.A. would not be "productive." Thus, as in *Dushkin*, we are not presented with a case where "the prosecutor avoid[ed] asking the witness about his or her prior allegations or expressly inform[ed] the witness that he or she may decline to respond to specific questions."[41]

Under these circumstances, we conclude that while D.A.'s lack of memory was a proper subject for cross-examination, it did not by itself make her unavailable for purposes of the Confrontation Clause.[42] Because D.A. was "available for cross-examination" as required by Evidence Rule 801(d)(3)(B), we reject Lee's argument that the trial court erred in admitting D.A.'s recorded statement.[43]

---

[39] *Dushkin*, 2015 WL 996189, at *4 (citations omitted).

[40] *Id.*

[41] *Id.*

[42] *See id.*

[43] Lee also argues that the trial court erred in admitting the entirety of the recording as a prior inconsistent statement under Evidence Rule 801(d)(1). But this argument is premised on the acceptance of Lee's first argument, *i.e.*, it presumes that the video was not independently admissible under Evidence Rule 801(d)(3). Because we conclude that the recording was independently admissible, we do not reach the question of whether the

(continued...)

*Lee's arguments that his prior military adjudication for possession of child pornography does not qualify as a prior felony conviction for purposes of presumptive sentencing*

At sentencing, the trial court sentenced Lee as a second felony offender based on his prior military adjudication for possession of child pornography. On appeal, Lee argues that the trial court erred in considering his previous military adjudication as a prior felony conviction for presumptive sentencing purposes.

Lee makes two separate claims of error. First, Lee argues that the federal statute under which he was previously convicted is not "similar" to its Alaska counterpart for presumptive sentencing purposes. Second, Lee argues that the military adjudication cannot be used to enhance his sentence because the court-martial system does not protect fundamental rights — namely, the right to a jury of one's peers and the right to a unanimous verdict. We address each of these arguments in turn.

*The federal statute under which Lee was previously convicted of possessing child pornography is similar to its Alaska counterpart*

Under AS 12.55.145(a), a prior felony conviction in another jurisdiction must be "similar" to a felony in Alaska to be considered a prior felony for presumptive sentencing purposes.[44] Whether an out-of-state conviction constitutes a prior felony for

---

[43]  (...continued)
recording was also admissible as a prior inconsistent statement.

[44]  *See, e.g.*, *Brown v. State*, 425 P.3d 216, 217 (Alaska App. 2018) (analyzing whether out-of-state driving under the influence offense was sufficiently similar to Alaska version); *Borja v. State*, 886 P.2d 1311, 1314 (Alaska App. 1994) (holding out-of-state accessory after the fact offense had "elements similar" to Alaska felony).

purposes of presumptive sentencing is a question of law that this Court reviews de novo.[45]

Here, as Lee concedes, both federal law and Alaska law criminalize the knowing possession of child pornography.[46] Both federal and Alaska law also have a similar definition of what constitutes child pornography.[47] Lee nevertheless argues that the statutes are dissimilar because (according to Lee) federal law does not require that the defendant know that the pornographic material involves a person under eighteen years of age and federal law also prohibits possession of computer-generated images that do not involve actual children.

But, as the State points out, neither of these propositions is true. In *United States v. X-Citement Video, Inc.*, the United States Supreme Court interpreted the federal child pornography statute to require proof that the defendant knew that the material in his possession "involved the use of a minor."[48] Likewise, in *Ashcroft v. Free Speech*

---

[45]   *Borja*, 886 P.2d at 1313-14.

[46]   18 U.S.C. § 2252A(a); AS 11.61.127(a).

[47]   18 U.S.C. § 2256(8) (defining "child pornography" as "any visual depiction" of "sexually explicit conduct" that involves or appears to involve a minor); 18 U.S.C. § 2256(2)(B) (defining "sexually explicit conduct" as "graphic sexual intercourse" or "lascivious simulated sexual intercourse"; "graphic or lascivious simulated" bestiality, masturbation, or sadistic or masochistic abuse; or "graphic or simulated lascivious exhibition"); AS 11.61.127(a) (defining "child pornography" as "any material" depicting conduct described in unlawful exploitation of a minor statute); AS 11.41.455(a) (defining prohibited conduct for unlawful exploitation of a minor as sexual penetration; "the lewd touching of another person's genitals, anus, or breast"; "the lewd touching by another person of the child's genitals, anus, or breast"; masturbation; bestiality; "the lewd exhibition of the child's genitals"; or sexual masochism or sadism").

[48]   *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68-78 (1994); *see also United States v. Williams*, 553 U.S. 285, 294 (2008) (concluding that "knowingly" applies to both

(continued...)

*Coalition*, the United States Supreme Court held that it was unconstitutional to prohibit possession of computer-generated images whose creation involved no actual children.[49]

In other words, there is no merit to Lee's attempts to distinguish between the two statutes. Instead, we conclude that the federal law prohibiting possession of child pornography under which Lee was previously convicted is sufficiently similar to its Alaska counterpart so as to qualify as a prior felony for purposes of presumptive sentencing.[50]

> *Lee has failed to show that his guilty plea in military court to possessing child pornography was obtained in violation of fundamental rights guaranteed by the Alaska Constitution*

Under Alaska law, an out-of-state conviction obtained in violation of a defendant's "fundamental rights" under the Alaska Constitution cannot be used to enhance a defendant's minimum sentence on a subsequent conviction in Alaska.[51]

This Court has previously recognized the rights to counsel and to a jury trial as "fundamental rights" in this context.[52] Thus, in *Pananen v. State*, we held that a trial

---

[48]   (...continued)
subdivisions of the federal child pornography statute, 18 U.S.C. § 2252A(a)(3)).

[49]   *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 258 (2002).

[50]   *See Phillips v. State*, 330 P.3d 941, 942, 945 (Alaska App. 2014) (holding that out-of-state driving while intoxicated conviction was "sufficiently similar" to the Alaska driving under the influence statute, because "the vast majority of defendants" convicted under other state's statute could be prosecuted under Alaska law).

[51]   *State, Dep't of Pub. Safety, Div. of Motor Vehicles v. Fann*, 864 P.2d 533, 537 (Alaska 1993); *see State v. Peel*, 843 P.2d 1249, 1250-51 (Alaska App. 1992); *Pananen v. State*, 711 P.2d 528, 530-32 (Alaska App. 1985).

[52]   *Peel*, 843 P.2d at 1251 (right to jury trial); *Pananen*, 711 P.2d at 532 (right to
(continued...)

court could not rely upon a previous out-of-state conviction to enhance the mandatory minimum sentence for an Alaska conviction when the defendant was not entitled to court-appointed counsel in their out-of-state proceedings.[53] We reasoned that "an uncounseled conviction is simply too unreliable to be depended on for purposes of imposing a sentence of incarceration, whether that sentence is imposed directly or collaterally."[54] In *State v. Peel*, we extended this reasoning to out-of-state convictions that were obtained without the right to a jury trial.[55] We have declined, however, to extend this reasoning to rights such as the right to an independent blood test,[56] or the advisement of the right to a jury trial prior to taking a guilty plea.[57]

Here, Lee argues that we should extend the reasoning of *Pananen* and *Peel* to include the right to a unanimous verdict and a jury of one's peers. And he argues that his military adjudication for possessing child pornography should not have been used for presumptive sentencing purposes because it was obtained in violation of those rights.[58]

---

[52] (...continued)
court-appointed counsel).

[53] *Pananen*, 711 P.2d at 530-32.

[54] *Id.* at 532.

[55] *Peel*, 843 P.2d at 1250-51.

[56] *State v. Simpson*, 73 P.3d 596, 599-600 (Alaska App. 2003).

[57] *Chilcote v. State*, 471 P.3d 599, 603-05 (Alaska App. 2020).

[58] At the time of Lee's prior offense, a general court-martial included a military judge and no less than five members on a panel (or only a military judge, at the request of the accused). 10 U.S.C. § 816(1) (2006). The court-martial panel was comprised of commissioned officers or warrant officers selected by the military judge; enlisted members were selected only if requested by the accused and if readily available. 10 U.S.C. § 825(a)-(c) (2006). Conviction was permitted upon a two-thirds majority vote. 10 U.S.C.

(continued...)

In response, the State argues that Lee has waived any challenges to how his trial in military court would have proceeded because he voluntarily and intelligently pleaded guilty to the crime of possessing child pornography with the aid of counsel.

We have not previously distinguished between an out-of-state guilty plea and an out-of-state jury verdict in assessing their validity as prior convictions for purposes of Alaska's presumptive sentencing laws. Indeed, *Peel* involved a no-contest plea, and we nevertheless concluded that the out-of-state conviction was invalid for purposes of presumptive sentencing because the defendant had no right to a jury trial on the charge.[59] But it is obvious how the absence of counsel could affect the voluntariness of a defendant's plea. And it is relatively easy to see how the complete absence of the right to a jury trial — as opposed to the procedures that accompany such a jury trial — could influence a defendant's decision to enter a plea and heighten the risk of unfairness under the Alaska Constitution. The same is not true with the rights at issue here.

Since Lee did not actually proceed to a court-martial adjudication, his conviction is not tainted by the possibility of a non-unanimous verdict, or affected by the

---

[58]  (...continued)
§ 852(2) (2006). Today, a three-fourths majority vote is required for conviction. 10 U.S.C. § 852(a)(3). The requirement that the enlisted member not be in the defendant's same unit has also since been removed. "Any enlisted member on active duty is eligible to serve on a general or special court-martial for the trial of any other enlisted member." 10 U.S.C. § 825(c)(1).

In his briefing, Lee also mentions that the military court-martial system does not provide for indictment by a grand jury. However, Lee does not expand on this point. To the extent Lee seeks reversal because military courts do not use grand juries, that argument is waived due to inadequate briefing.

[59]  *Peel*, 843 P.2d at 1249-51.

likelihood that the jury would primarily be comprised of officers.[60]  And Lee has not contended on appeal that the absence of the right to jury unanimity or the composition of the jury affected his own decision to enter a guilty plea to his prior offenses. Moreover, while the right to a unanimous jury has been recognized as "fundamental" by the United States Supreme Court, the right has not been found so "fundamental" as to require retroactive application of this right to convictions that have already become final.[61]

As the State points out, the vast majority of state and federal jurisdictions give full faith and credit to court-martial adjudications for purposes of sentence enhancements, notwithstanding the procedures that distinguish them from federal and state criminal proceedings.[62]  Only a few jurisdictions have held otherwise, and they have

---

[60]  If Lee had proceeded to an adjudication, he could have requested that "enlisted members comprise at least one-third of the membership of the court-martial."  10 U.S.C. § 825(c) (2006).

[61]  *Edwards v. Vannoy*, 141 S. Ct. 1547, 1552 (2021) (holding that the jury-unanimity rule established in *Ramos v. Louisiana*, 140 S. Ct. 1390, 1391, 1397, 1407 (2020), does not apply retroactively on federal collateral review).  The fact that the *Ramos* decision is not retroactive under federal law is potentially relevant to our analysis under *Pananen* and *Peel*. In *State v. Simpson*, 73 P.3d 596, 599-600 (Alaska App. 2003), we noted that one useful point of comparison in determining whether there has been a violation of a fundamental right is whether the right in question has been applied retroactively since its adoption.  *See also Chilcote v. State*, 471 P.3d 599, 605 (Alaska App. 2020) (noting that "if a violation of the right in question rendered any resulting conviction fundamentally unfair, the rule would have been applied retroactively").

[62]  *See, e.g.*, *United States v. Grant*, 753 F.3d 480, 485 (4th Cir. 2014) (holding that general court-martial conviction can be used to classify defendant as armed career criminal); *United States v. MacDonald*, 992 F.2d 967, 969-70 (9th Cir. 1993) (holding that court-martial conviction was a felony for purposes of federal felon-in-possession charge); *United States v. Lee*, 428 F.2d 917, 920 (6th Cir. 1970) (holding that court-martial conviction was

(continued...)

primarily done so based on their own statutory language.[63] Significantly, only one court (the Missouri Court of Appeals) appears to have rejected military adjudications on the grounds alleged here — that the absence of protections such as a jury of one's peers or a unanimous jury render such adjudications too unreliable to be used as a sentencing enhancement.[64]

Moreover, even Missouri makes an exception for military adjudications that are the result of a counseled guilty plea. In *State v. Grubb*, the Missouri Supreme Court held that a defendant's prior court-martial conviction for assault, which was entered pursuant to a counseled guilty plea, qualified as a "felony conviction" for purposes of Missouri's recidivism statute.[65] The court acknowledged that an intermediate appellate court had previously rejected the use of military adjudications on the ground that the

---

[62]  (...continued)
a "crime" for purposes of the federal crime of transporting firearms interstate); *State v. Grubb*, 120 S.W.3d 737, 740-41 (Mo. 2003) (en banc) (holding that court-martial guilty plea entered when represented by counsel qualified as a "felony conviction"); *Commonwealth v. Smith*, 598 A.2d 268, 272-74 (Pa. 1991) (holding that prior court-martial guilty pleas were "prior convictions"); *Millwood v. State*, 721 P.2d 1322 (Okla. Crim. App. 1986) (holding that court-martial convictions that are similar to a state statute may be used as sentencing enhancement); *Scott v. United States*, 392 A.2d 4, 7-8 (D.C. App. 1978) (same); *People v. Calderon*, 205 Cal.App.2d 566, 572-73 (Cal. App. 1962) (same).

[63]  *See, e.g.*, *State v. Anaya*, 933 P.2d 223, 231 (N.M. 1996) (discussing New Mexico's felony DWI statute, which defines "prior felony conviction" as "any prior felony for which the person was convicted other than offense triable by court martial"); *State v. Paxton*, 440 P.2d 650 (Kan. 1968) (holding that a previous court-martial conviction could not be used to enhance sentence but relying on language of Kansas habitual criminal statute which is different from Alaska law).

[64]  *State v. Mitchell*, 659 S.W.2d 4, 6 (Mo. App. 1983).

[65]  *State v. Grubb*, 120 S.W.3d 737, 740 (Mo. 2003).

difference in procedures made them unreliable. But the court concluded that guilty pleas did not suffer from those same concerns. As the court explained:

> Because his court-martial conviction was the result of a guilty plea he entered while he was represented by counsel, none of the potential due process issues raised in *Mitchell* are present. In fact, by pleading guilty to the offense, Grubb waived his right to contest the process by which he might have been tried.[66]

Other jurisdictions have applied similar reasoning to military adjudications that are the result of a counseled guilty plea.[67]

We find this reasoning persuasive, particularly given the heightened protections that apply to guilty pleas in military courts. Under Alaska Criminal Rule 11(f), a court may accept a guilty plea if the court is "satisfied that there is a reasonable basis for the plea." But under Rule for Courts-Martial 910, a plea of guilty "must be in

---

[66]    *Id.* Grubb also argued that considering his court-martial conviction was contrary to the legislative intent, as the legislature failed to amend the recidivism statute after *Mitchell*. *Id.* at 740-41 (citing *Mitchell*, 659 S.W.2d at 6). The Missouri Supreme Court found this argument unpersuasive. *Id.* The legislature may have had other motivations for its inaction, and the court of appeals that decided *Mitchell* was not a "court of last resort," so the decision was not binding on the Missouri Supreme Court. *Id.*

[67]    *See e.g., State v. Morley*, 952 P.2d 167, 180 (Wash. 1998) (en banc) ("Morley expressly waived his right to be tried by a jury, and he voluntarily submitted his trial to a military judge. Given that he was tried by a military judge, the alleged differences between military and civilian juries are irrelevant."); *State v. Graves*, 947 P.2d 209, 215 (Or. 1997) (Edmonds, J., concurring) ("There is no indication in this record that defendant's pleas were not factually based or not made voluntarily and intelligently. . . . Defendant should not be heard to complain about deficiencies in a fact-finding process in which he did not participate and which did not lead to the judgments of conviction in issue.").

accord with the truth."[68]  The plea must be voluntary and have a "factual basis."[69]  The accused must be questioned under oath, and if any potential defense is raised, then the judge cannot accept the plea "unless the accused admits facts which negate the defense."[70]  These procedures are meant to establish the defendant's "guilt-in-fact."[71]

In the current case, Lee has not argued that his guilty plea was not voluntarily or intelligently made.  Nor has he claimed that there was no factual basis for the plea.  To the contrary, the record shows that, as part of his plea, Lee signed a four-page stipulation affirmatively admitting his possession of child pornography during the applicable times.

Given this record, we conclude that the trial court did not err when it treated Lee's military conviction, which was the result of a counseled guilty plea, as a prior felony conviction for purposes of enhancing Lee's sentence under Alaska's presumptive sentencing laws.

*Conclusion*

For the reasons explained in this opinion, we AFFIRM Lee's convictions.

---

[68]  Rule for Courts-Martial (R.C.M.) 910(e), Discussion.

[69]  R.C.M. 910(d), (e).

[70]  R.C.M. 910(e), Discussion.

[71]  *United States v. Care*, 40 C.M.R. 247, 253 (C.M.A. 1969).